**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| MANAGEMENT DATA SYSTEMS INTERNATIONAL, INC., a Georgia corporation,<br><br>     *Plaintiff,*<br>vs.<br><br>TRIFECTA NETWORKS LLC, a Florida limited liability company,<br><br>     *Defendant.* | CASE NO.: |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
AND JURY TRIAL DEMAND**

Plaintiff Management Data Systems International, Inc ("MDSI"), files this complaint for damages and injunctive relief against Trifecta Networks, LLC ("Trifecta") and states:

**INTRODUCTION**

1. This is an action for false advertising in violation of the Lanham Act. The case involves two companies in the network equipment space. The Plaintiff, MDSI, sells new networking equipment and pre-owned equipment certified by the manufacturers. MDSI is an official partner and authorized reseller of numerous major brands. The Defendant, Trifecta, sells "unused" networking equipment and equipment that is "pre-owned certified" by nobody other than Trifecta itself. Trifecta is neither an official partner nor authorized reseller of many major equipment brands, in spite of its efforts to confuse the market into thinking otherwise.

2. To put it simply: Both companies operate in the network equipment market. MDSI operates in the primary, authorized market whereas Trifecta operates in the secondary, grey market. But that's not how Trifecta tells it. Trifecta's entire public presence is built on a

campaign of false advertising designed to con the consuming public into thinking that Trifecta is a large, well-established company with extensive industry partnerships and offering certified products.

3. Through a series of outright lies, misrepresentations, half-truths and fake online testimonials, Trifecta has confused customers in the relevant market regarding the quality of its products, its affiliations with manufactures, and the size and scope of its business.

4. MDSI seeks damages stemming from Trifecta's wrongful conduct to the fullest extent permitted by law; an injunction prohibiting further false advertising; and an affirmative injunction requiring Trifecta to engage in corrective advertising and make appropriate disclosures to its clients and prospective clients.

## THE PARTIES

5. Plaintiff MDSI is a Georgia corporation with its principal place of business located at 6225 Shiloh Road, Alpharetta, Georgia, 30005.

6. Defendant Trifecta is a Florida limited liability corporation with its principal place of business located at 4027 Tampa Road, Oldsmar, Florida, 34677.

7. Both Parties serve clients located throughout the United States.

## JURISDICTION

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125.

## VENUE

9. Venue in this Court is proper under 28 U.S.C. § 1391.

10. Defendant Trifecta's principal place of business is located within this judicial district.

11. Defendant Trifecta is subject to this Court's personal jurisdiction.

## GENERAL ALLEGATIONS

12. MDSI is a network product, service, and solution provider headquartered in Georgia and established in 1990. MDSI sells new products and certain refurbished products that have been certified by their respective manufacturers. MDSI is an official partner and authorized reseller of numerous major brands, including Cisco, Avaya, HP, Juniper and many more. In addition to offering products, MDSI offers a full range of related services including assessment, design, implementation, consulting, security, data migration, supply chain logistics, and more. MDSI spends millions of dollars annually to maintain the certifications necessary to be an official partner and authorized reseller of various manufacturers.

13. In contrast, Trifecta Networks sells grey or secondary market products. Trifecta is based in Florida and was established in January 2018. Trifecta is neither an official partner nor authorized reseller of any major manufacturer. Trifecta does not offer any of the aforementioned services. Essentially, Trifecta is a warehouse of used networking equipment.

14. Although MDSI and Trifecta are drastically different businesses, Trifecta's conduct, as alleged below, constitutes a concerted effort to take market share from MDSI and other authorized, primary market actors by deceiving consumers about the true nature of its business.

15. Trifecta spun out of a managed IT services provider called Vology, Inc. Vology sought to become an authorized reseller for certain manufacturers, but could not obtain that

status while simultaneously selling grey market goods. For example, Vology sought to become a Cisco partner but could not do so while selling grey market Cisco products. Vology's solution: In January 2018, Vology got out of grey market products and sold that division of its company to a new entity: Trifecta. Subsequently, in April 2018, Vology became a Cisco partner. Upon information and belief, Vology's CEO, Barry Schlenk, maintains an ownership interest in Trifecta despite Vology's sale of its grey market division.

16. Like MDSI and other companies in the network equipment market, Trifecta advertises its products to potential clients through its website. See www.trifectanetworks.com. Trifecta's online advertising, primarily through its website, is replete with false and misleading representations.

### Trifecta's Misrepresentations Regarding Its Product Offerings

17. Trifecta's website repeatedly states that the company sells "new and certified pre-owned network equipment." This is false.

18. First, Trifecta does not sell "new" equipment. None of the products sold by Trifecta are technically new. At best, they are purportedly unused. Trifecta does not obtain them from the manufacturers. Instead, Trifecta acquires its products through any other channel possible. Often, Trifecta purchases product from companies that have a surplus of network products, or, from entities that have amassed a collection of network products specifically for the purpose of selling them on the grey market. In some instances, Trifecta obtains its purportedly "new" products from overseas. In other instances, Trifecta represents its products as "new" or "unused" when – in fact – its products are used and merely repackaged.

4

19. Second, Trifecta's use of the term "certified pre-owned" is either blatantly false, or, intentionally misleading. To be clear: Trifecta uses the term "certified pre-owned" to trick potential buyers into believing that the relevant product is certified pre-owned *by the manufacturer*. Indeed, many network equipment manufacturers offer certified pre-owned or certified refurbished equipment through their authorized partners. But Trifecta is neither an authorized partner nor authorized reseller. As such, Trifecta's repeated references to "certified pre-owned" equipment are nonsense.

20. For example, the Lifetime Warranty page of Trifecta's website states, "Your certified pre-owned Cisco product will be materially free from defects." The most reasonable interpretation of that statement is that Trifecta is selling pre-owned product that is certified by Cisco. But that is false. At best, the equipment is certified by Trifecta itself.

21. Trifecta makes these false and misleading claims to bolster its image and confuse customers and potential customers.

**Trifecta's Misrepresentations Regarding Industry Affiliation**

22. Beginning in January 2018, Trifecta at various times utilized the official logos of certain manufacturers on its website. Use of a manufacturer's logo in this specific context implies that the vendor, i.e. Trifecta, is authorized to use that specific logo and suggests that Trifecta is in some way an authorized partner or provider of that manufacturer's product. But for such authorization, a vendor would have no legal right to use an official logo on its website and in commerce. Beginning in January 2018, Trifecta explicitly held itself out as a "partner[]" of various manufacturers. For example, Trifecta's website prominently advertised:

5



23. When Cisco learned of this, they sent Trifecta a cease and desist letter demanding that Trifecta cease its unauthorized use of the Cisco logo because such unauthorized use could confuse customers and potential customers. Trifecta removed Cisco's official logo from its website, but replaced it with a phony Cisco logo. As of the date of this filing, that phony logo is still on Trifecta's website, situated next to the actual logos of other manufacturers:



24. This is a blatant attempt to convince actual and prospective customers that Trifecta is affiliated with various manufacturers. Once again, that is false.

**Trifecta's Misrepresentations Regarding the Size and Scope of its Business**

25. Consistent with the foregoing, Trifecta's advertising frequently attempts to make the company look bigger, better and more legitimate than it really is.

26. Trifecta's website boasts of "17 years as one of the Industry's Leading Quality Assurance Testing Labs". Its advertising on social media boasts of "nearly two decades" in business. This is absurd. Trifecta is a new company that did not exist until January 2018.

27. Trifecta's website boasts of its global presence and extensive customer base, saying, "Trifecta Networks is a leading provider of new and certified pre-owned networking equipment with over 10,000 customers in 100+countries."

6

28. Once again, this is false. Trifecta has far less than 10,000 customers and most certainly does not have customers in 100 countries.

29. Trifecta's LinkedIn page goes even further, claiming that the company has "tens of thousands of clients". Once again, this is a blatant lie.

30. Trifecta's website claims that the company has over $100 million worth of inventory in stock. Once again, that number is a fabrication.

### Trifecta's Fake Online Reviews

31. Given the foregoing, it should come as no surprise that Trifecta also seeks to bolster its image and reputation via fake online reviews.

32. At the bottom of Trifecta's website, the company displays purported "Customer Testimonials." The first testimonial displayed is a glowing review by Paul Golida stating, "I had an urgent need as a network switch at a remote site crashed. I called Trifecta and Chris was able to get me a quote in less than 5 minutes, process my order under 10, and had the switch to my site in less than 10 hours."

33. To begin with, there are presently no Trifecta sales representatives named Chris. Chris Toepke is an owner of the company, but he does not fill orders or provide quotes. The reality: The testimonial is a pure fabrication. The supposed customer Paul Golida is a figment of Trifecta's vivid imagination. There is no Cisco network engineer named Paul Golida who purchased product from Trifecta.

34. Likewise, Trifecta's Google reviews are a scam. There are eleven glowing, 5-star reviews. The first couple reviews are illustrative of the general theme: One Chris Angulo left a review stating, "Best place to receive fast and accurate quotes with short lead times on

networking equipment for small, medium and large businesses." One John Gilio states, "Great staff that is very helpful. Fast delivery times." One John Koenig states, "Awesome company with a very knowledgeable staff, excellent product testing facility in-house and fast shipping!" In fact, it appears that each one of the eleven Google reviews on Trifecta's Google business page were left by employees of either Trifecta or Vology. On information and belief, Trifecta has a company policy requiring certain of its employees to leave fake, 5-star reviews on its Google business page.

35. Not surprisingly, Trifecta's glowing self-reviews violate Google's policy on Prohibited and Restricted Content – Conflicts of Interest. But Trifecta engages in certain other business practices that are even more disconcerting.

### Trifecta's Illegal Business Practices

36. In addition to its robust campaign of false advertising, Trifecta engages in other illegal business practices. For example, Trifecta sells certain products that require licenses that can only be obtained from the manufacturer or an authorized reseller. Trifecta is not an authorized reseller. But that does not stop Trifecta from selling those products anyway, along with whatever license they can find on the grey market.

37. Here is a specific instance: In April 2018, Trifecta sold certain Cisco software to Dollar Tree Stores, Inc. Along with the software, Trifecta provided Dollar Tree a product activation key. When the company attempted to utilize the key and activate the product, the activation failed. Dollar Tree then contacted Cisco. In response, Cisco advised that the product activation key was not valid, as "[i]t was not issued or authorized by Cisco, because the vendor you purchased it from is not an authorized Cisco reseller or distributor, and therefore had no

8

legal right to issue the [product activation key] or distribute a license to the underlying Cisco software."

38. It is axiomatic that if Trifecta sells a customer a product and a license, Trifecta is holding itself out to the consuming public as having the legal right to sell that license. This is false. This in and of itself is a false advertisement that Trifecta makes on a daily or near daily basis.

39. Trifecta's dishonesty illegally enhances its position in the competitive marketplace to the detriment of both its competitors and the consuming public.

## COUNT I
## FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)

40. Plaintiff incorporates and realleges paragraphs 1 through 39 above as if fully set forth herein.

41. Plaintiff and Defendant both compete in the network products market.

42. Both Plaintiff and Defendant are engaged in business throughout the United States.

43. Both Plaintiff and Defendant engage in interstate commerce.

44. Defendant has made misleading factual representations and advertisements regarding its products in interstate commerce.

45. Defendant has made such false and misleading representations on its website, on LinkedIn, and directly to its customers and prospective customers.

46. Defendant has made false and misleading representations about the nature of its products and its relationships with manufacturers.

47. Defendant has made false and misleading representations about the size and scope of its business.

48. Defendant has utilized false and misleading reviews and testimonials to bolster its reputation.

49. At the very least, Defendant's misrepresentations are likely to mislead, confuse, or deceive customers and prospective customers.

50. Defendant has made such false and misleading representations in order to influence customers to buy Defendant's services.

51. Defendant has made and continues to make these representations with the intent to mislead its customers and the public.

52. Defendant knew or should have known that these representations were false and/or misleading.

53. Defendant's false and misleading representations have deceived and confused Defendant's customers and have the capacity to continue to deceive Defendant's customers and prospective customers.

54. Defendant's misrepresentations are sufficiently disseminated to actual and prospective clients seeking networking products so as to constitute advertising.

55. Certain customers would not do business with Defendant were they aware that, despite its representations, Defendant is essentially a warehouse of used grey market products that has been in existence for less than nine months; is in no way authorized by manufacturer; offers no products that are authorized, approved or certified by manufacturers; and, in some instances, illegally sells product licenses that it is not authorized to distribute.

56. Defendant has made false and misleading representations in interstate commerce and these false and misleading representations affect interstate commerce.

57. Defendant's false and misleading representations have had a negative material effect on MDSI's business and the business of other competitors in the network equipment market.

58. As a result of Defendant's conduct, MDSI has been damaged in an amount to be determined at trial.

59. Defendant's conduct poses an ongoing threat to both its competitors and the consuming public and must be enjoined.

## PRAYER FOR RELIEF

Plaintiff requests:

a) Damages to the fullest extent permitted by law under the Lanham Act;

b) A preliminary and permanent injunction requiring corrective advertising under the Lanham Act in which Trifecta must communicate to all of its past, present, and potential clients that it has misrepresented various material aspects of its business, including: (1) the size and scope of its business, (2) its product line, (3) its affiliation with manufacturers, and (4) online customer testimonials;

c) A preliminary and permanent injunction immediately suspending all of Trifecta's sales of network equipment pending its ability to show compliance with a court order mandating the corrective actions described in (b) above;

d) An award of attorney's fees and costs; and

e) Such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated: August 15, 2018

Respectfully submitted,

By: s/ *Jonathan E. Pollard*
Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com
**Trial Counsel**

Christopher S. Prater
Florida Bar No.: 105488
cprater@pollardllc.com

**Pollard PLLC**
401 E. Las Olas Blvd.
Suite, #1400
Fort Lauderdale, FL 33301
Telephone: 954-332-2380
Facsimile: 866-594-5731

*Attorneys for Plaintiff*